In re INTERCO SYSTEMS, INC., Debtor.

C. Bruce LAWRENCE, Trustee, Plaintiff,

v.

**WILLOW POINT ON THE BAY, Defendant.**

Bankruptcy No. 93–20144.
Adv. No. 95–2043.

United States Bankruptcy Court,
W.D. New York.

Aug. 21, 1995.

quested that the petition be dismissed. At a pretrial conference on March 16, 1993, Interco indicated that it wished to remain in the Bankruptcy Court and attempt to reorganize under Chapter 11. Because Section 706(a) gives a Chapter 7 debtor acting in good faith the absolute right to convert to Chapter 11 if the case has not previously been converted, counsel for the petitioning creditors and Interco agreed to discuss Interco's desire to proceed in Chapter 11 as an alternative to conducting a trial of the issues under Section 303(h). To afford the parties time for such further discussion, a trial on the involuntary petition was scheduled for April 2, 1993. On April 1, 1993, a stipulation between Interco and the petitioning creditors was filed with the Court. The stipulation agreed that Interco would go forward with a voluntary Chapter 11 case. After some procedural matters were corrected, the case went forward in Chapter 11 with January 26, 1993 deemed to be the order for relief date.

On June 14, 1993, the Creditors Committee formed in the Chapter 11 case filed a motion pursuant to Section 1112(b) which requested that the Interco case be converted to a Chapter 7 case, or, in the alternative, that a trustee be appointed pursuant to Section 1104(a) (the "Conversion Motion"). Full day evidentiary hearings were held on June 18, 21, 23, 28 and July 9, 1993, and oral argument by counsel was presented on July 14, 1993, at which time the Court reserved on the Conversion Motion.

By a written decision issued on July 19, 1993 the Court determined that the Interco Chapter 11 case should be converted to a Chapter 7 case for cause, and thereafter on July 21, 1993 the designation of the Office of the United States Trustee appointing C. Bruce Lawrence as Trustee (the "Trustee") was filed with the Court.

On January 24, 1995 the Trustee commenced an adversary proceeding (the "Willow Point Adversary Proceeding") against Willow Point on the Bay Partnership, a New York General Partnership ("Willow Point").

The complaint (the "Complaint") in the Willow Point Adversary Proceeding alleged that: (a) in 1988 the principal shareholder,

Nixon, Hargrave, Devans & Doyle, Rochester, NY, for plaintiff.

Redmond & Parrinello, Rochester, NY, for defendant.

## BACKGROUND

JOHN C. NINFO, II, Bankruptcy Judge.

On January 26, 1993, three creditors of the debtor, Interco Systems, Inc. ("Interco"), filed an involuntary Chapter 7 petition alleging that Interco was not paying its debts as they became due.

Interco interposed an answer, claiming that the indebtedness alleged by each of the petitioning creditors was in dispute, and re-

Chief Executive Officer and Chairman of the Board of Directors of Interco, Clifford Davie ("Davie"), caused Willow Point to be formed to purchase an unfinished condominium development located in Webster, New York which was known as Willow Point on the Bay; (b) with $1,094,041.00 in funds provided by Interco, Willow Point purchased the unfinished condominium development; (c) even though Davie contributed no capital to Willow Point, he was given a 60 percent interest in the partnership and Interco a 40 percent interest; and (d) from 1988 through 1993 Interco loaned substantial amounts of money to Willow Point.

The Complaint further alleged that: (a) Interco's 1988 audited financial statement indicated that as of December 31, 1988 there was an outstanding note receivable due from Willow Point in the amount of $2,405.470; (b) in addition to the funds evidenced by the outstanding note receivable, between 1989 and 1993 Interco provided funds of at least $1,345,370; and (c) approximately $203,390 of the funds provided by Interco to Willow Point were diverted to an account known as the Clifford Davie Bay Account, an account owned and controlled solely by Clifford Davie and used for his own purposes.

The Complaint also alleged that, although there did not appear to have been any formal written repayment agreements between Willow Point and Interco, Interco's 1989 financial statements indicated that Interco, Davie and Willow Point had agreed that proceeds from the sale of townhouse units were to be applied towards the amount owed to Interco. However, the Complaint alleged that: (a) the proceeds received by Willow Point from the transfers of various townhouse units directly to Davie were less than they should have been because the transfers were for less than fair consideration; and (b) in the case of some transfers, the proceeds received, if any, were not applied as agreed to reduce the amounts owed to Interco.

The Complaint then set forth ten separate causes of action, including: breach of contract; breach of constructive contract; money had and received; unjust enrichment; request for an accounting; a cause of action under Section 542 for the collection of the indebtedness due from Willow Point to Interco; a request for a turnover of financial records; a Section 544 avoidance cause of action; a Section 549 post petition transfer avoidance cause of action; and a Section 548 fraudulent conveyance avoidance cause of action.

Relevant to the issues currently before the Court is the fact that the relationships and transactions between Interco and Willow Point were matters of great concern to the Creditors Committee when it made the Conversion Motion. In its Motion the Committee alleged that Davie had resisted turning over the books and records of Willow Point for review. Also, the Committee devoted a significant amount of time during the various hearings on the Conversion Motion inquiring into the relationships between Willow Point and Interco, the amounts due from Willow Point to Interco, and the related activities of Davie with respect to Willow Point and Interco. In its written Decision converting the Interco Chapter 11 case to a Chapter 7 case the Court noted that there were numerous questionable transactions involving real estate investments in which Interco and Davie participated which "may properly be categorized as fraudulent or dishonest, evidenc[ing] incompetence or gross mismanagement of the affairs of Interco, or, when viewed together, be so questionable and improper that notwithstanding Interco's explanations for them there is cause ... to remove current management and replace it with a trustee." As a result, it was clear to anyone and everyone, including Davie, that within the time frame required by Section 546 the Trustee would be pursuing Willow Point for the collection of amounts alleged to be due to Interco. After the Willow Point Adversary Proceeding was commenced on January 24, 1995 by the filing of the Complaint, the Court issued a summons (the "Summons") on January 24, 1995 which showed the defendant as:

Willow Point on the Bay a New York General Partnership
16 Mountain Ash Trail
Webster, New York 14580

An affidavit of service filed with the Court on February 23, 1995 indicated that on January 25, 1995 the attorneys for the Trustee, Nix-

on, Hargrave, Devans & Doyle ("Nixon"), served copies of the Summons and Complaint on Willow Point by mailing them to Davie, as general partner, at 16 Mountain Ash Trail ("Mountain Ash"). In accordance with Rule 7012(a) of the Federal Rules of Bankruptcy Procedure the Summons indicated that the defendant had thirty (30) days from the issuance of the Summons to answer the Complaint.[1] This date was February 23, 1995. An additional affidavit of service filed with the Court on February 23, 1995 indicated that on February 9, 1995 a summons and Complaint were served on Willow Point by personally delivering them to a female adult at Mountain Ash.

The Court's file indicated that on February 9, 1995, at the request of Nixon, a second summons (the "Supplemental Summons") was issued in the Willow Point Adversary Proceeding which showed the defendant as:

Willow Point on the Bay a New York General Partnership
20 Royal Palm Way
Unit 103
Boca Raton, Florida, 33432

An affidavit of service filed with the Court on February 23, 1995 indicated that on February 10, 1995 Nixon served copies of the Supplemental Summons and Complaint on Willow Point by mailing them to Davie, as general partner, at 20 Royal Palm Way ("Royal Palm"). The last day to answer the Complaint as indicated by the Supplemental Summons (30 days from issuance) was March 11, 1995.

No answer or motion in connection with the Complaint was filed on behalf of Willow Point with the Court on or before Monday, March 13, 1995 (March 11, 1995 was a Saturday).

On March 27, 1995, Willow Point filed a motion (the "Extension Motion"), returnable April 12, 1995, requesting an order denying the Trustee's application for default in the Willow Point Adversary Proceeding and granting Willow Point an extension of time to answer the Complaint. The Affirmation of the attorney for Willow Point, included with its Motion, indicated that: (1) on February 24, 1995 he had been retained by the defendant in the Willow Point Adversary Proceeding; (2) on March 1, 1995, when the only document he had received from Willow Point was the Complaint, he contacted Nixon by telephone to request an extension of time to answer the Complaint to March 27, 1995 to allow him to meet on March 20, 1995 with various representatives of Willow Point who were scheduled to return from Florida at that time; (3) during his March 1, 1995 conversation with Nixon he believed he was granted the requested extension, but later that day was advised by two Nixon attorneys that no extension was being given and that it was Nixon's position that the time to answer or appear in connection with the Complaint had expired in late February; (4) notwithstanding Nixon's position during the March 1, 1995 telephone conversations, an application for default, which he ultimately received on March 23, 1995, indicated that the time to answer the Complaint had expired no later than March 13, 1995, a time after both March 1, 1995 when he first contacted Nixon and twice requested an extension to answer to March 27, 1995 and March 9, 1995 when he forwarded correspondence to Nixon which confirmed that he had been retained by Willow Point and renewed his request for an extension of time to answer the Complaint to March 27, 1995; and (5) by letter dated March 10, 1995 Nixon had confirmed its position that the time to answer or appear in the Willow Point Adversary Proceeding expired in late February, 1995.

---

1. Federal Rule of Bankruptcy Procedure 7012(a) provides 30 days to answer from the *issuance* of the summons and Rule 7004(f) requires service within 10 days or reissuance of the summons. Together these rules operate to provide the same general time period as Federal Rules of Civil Procedure 12(a) which provides 20 days to answer from the *service* of the summons and complaint. *See* 9 *Collier on Bankruptcy* ¶ 7012.04 (15th ed. 1995). In essence the deviation is to further the policy of moving bankruptcy cases to a conclusion as quickly as possible. Making the issuance of the summons the key date in computing the time to answer and allowing the summons to be reissued, if necessary, implements this policy. For a thorough discussion of Federal Rules of Bankruptcy Procedure 7004(f) and 7012(a) and the deviation of these provisions from the Federal Rules of Civil Procedure, *see In re Dahowski*, 48 B.R. 877 (Bankr.S.D.N.Y.1985).

On March 28, 1995, Nixon filed an Application for Default (the "Default Application") which indicated that: (1) on March 22, 1995 it had served a copy of the Default Application by mail on Davie at both Mountain Ash and Royal Palm, the attorney for Willow Point and the Office of the United States Trustee; (2) service of the Summons and Complaint in the Willow Point Adversary Proceeding had been made on Willow Point by mailing copies of the Summons and Complaint to the attention of the Managing General Partner, Davie, at Mountain Ash on January 25, 1995 and Royal Palm on February 10, 1995; and (3) "[d]efendant Willow Point on the Bay, has not appeared in this action, has failed to plead or otherwise defend in this action, and the time to plead or otherwise defend expired no later than March 13, 1995".

Notwithstanding the Extension Motion, pursuant to Rule 7055 of the Rules of Bankruptcy Procedure, on March 28, 1995, based on the Default Application and the fact that Willow Point had not filed any pleadings with the Court on or before March 13, 1995, the Clerk of the Bankruptcy Court entered a Certificate of Default in the Willow Point Adversary Proceeding.

On April 7, 1995, Nixon filed a motion (the "Default Judgment Motion") for the entry of a default judgment in the Willow Point Adversary Proceeding which was made returnable on April 12, 1995, the same date as the Extension Motion. The Default Judgment Motion asserted that: (1) copies of the Summons and Complaint mailed to Davie at Mountain Ash on January 25, 1995 had not been returned; (2) on March 1, 1995 when Nixon was contacted by the attorney for Willow Point, the attorney acknowledged that Mr. Davie had received the Complaint in the Willow Point Adversary Proceeding; (3) in several telephone conversations which took place on March 1, 1995 and again by letter on March 10, 1995, the attorney for Willow Point was advised that Nixon intended to proceed to obtain a default judgment in the Willow Point Adversary Proceeding; (4) notwithstanding Davie's assertion that he was a resident of Florida in January and February of 1995, Mountain Ash was a principal place of abode and dwelling house since Davie owned Mountain Ash and resided there at least a part of the time; (5) because Nixon was concerned that Davie would ignore service by mail, it had attempted to serve him personally at Mountain Ash; (6) as a precaution "in case Mr. Davie claimed that service at 16 Mountain Ash Trail was insufficient", Nixon obtained the Supplemental Summons, served it by mail upon Davie at the Royal Palm address, which was identified as an address in an additional search performed after January 24, 1995 on the CDB Infotek database.

On the April 12, 1995 return date of the Extension and Default Judgment Motions, the Court heard the initial arguments of the parties, adjourned the motions to May 3, 1995 and requested that Willow Point file papers which would present the matter either as a motion to set aside a default, pursuant to Rule 7055 of the Rules of Bankruptcy Procedure and Rule 55(c) of the Federal Rules of Civil Procedure, or as a motion requesting relief from a judgment or order, pursuant to Rule 9024 of the Rules of Bankruptcy Procedure and Rule 60(b) of the Federal Rules of Civil Procedure.

■ On May 2, 1995, Willow Point filed a motion (the "Rule 55 Motion"), pursuant to Rule 7055 of the Rules of Bankruptcy Procedure and Rule 55(c) of the Federal Rules of Civil Procedure, for an order to set aside the default entered on March 28, 1995 and for other relief. The motion alleged that there was good cause shown to set aside the entry of the default.[2] An Affidavit by Davie in

---

**2.** Rule 7055 of the Rules of Bankruptcy Procedure provides:

(c) *Setting Aside Default.* For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

The Court of Appeals for the Second Circuit has established three criteria for determining whether entry of a default should be set aside for "good cause" under Rule 55(c): (1) whether the default was willful, (2) whether the moving party has presented a meritorious defense with respect to the underlying action and (3) whether setting aside the default would prejudice the party who

support of the Rule 55 Motion (the "Davie Affidavit") which addressed the three criteria to be evaluated in determining good cause stated in connection with the criterion of willful default that: (1) Davie purchased Royal Palm in October of 1994 and since December of 1994 Davie considered Royal Palm to be his dwelling house or usual place of abode, although he maintained Mountain Ash as a place to stay when he visited New York; (2) Davie did not become aware of the Willow Point Adversary Proceeding until after February 10, 1995 when he received copies of the papers in Florida; (3) between his receipt of the papers in Florida and February 24, 1995 Davie had contacted two Rochester attorneys to represent Willow Point in connection with the Adversary Proceeding but was advised that they had conflicts; (4) on or about February 24, 1995, Davie met in Rochester with the attorney who now represented Willow Point and was paid a retainer on or about February 27, 1995; (5) Davie never received the papers mailed to or served at Mountain Ash; and (6) Davie misread the papers in the Willow Point Adversary Proceeding believing that he had until thirty days after he received them, or about March 15, 1995, to answer.

As to presenting a meritorious defense, the Davie Affidavit attached a copy of an answer to the Complaint (the "Willow Point Answer") which had been served on Nixon on April 11, 1995, and further alleged that: (1) Willow Point completed thirteen units and sold them for fair consideration; (2) Davie believed that the $2,405,470 carried on Interco's 1988 audited financial statement as due and owing from Willow Point was not an accurate figure; (3) Davie questioned the amount alleged to be due from Willow Point to Interco as indicated on the 1989 and 1990 audited financial statements; (4) Davie believed the money that went into the Clifford

Davie Bay account was for rental payments on condominium units which Davie owned; (5) the Interco/Willow Point relationship needed to be further developed and explained through the process of discovery; and (6) all of the documents with regard to Willow Point were in the possession of the Trustee's accountants.

On May 8, 1995, Nixon filed papers on behalf of the Trustee in further support of its Default Judgment Motion and in opposition to the Rule 55 Motion which asserted that: (1) Mountain Ash was a proper place to serve Willow Point by serving Davie as a general partner pursuant to Rule 7004(b)(3) [3] of the Rules of Bankruptcy Procedure, since it was an address at which Davie received mail; (2) Willow Point had failed to establish, as required under the good cause shown standard of Rule 7055 of the Rules of Bankruptcy Procedure and Rule 55(c) of the Federal Rules of Civil Procedure, that it had a meritorious defense to the Willow Point Adversary Proceeding; (3) an attached affidavit of a process server in Florida indicated that Davie was avoiding service in Florida, from which it should be inferred that he was aware of the service which was effected at Mountain Ash, and, therefore, the default by Willow Point was willful; (4) the Trustee would be prejudiced if the default were vacated because there was presently an action pending against Willow Point by the Homeowners Association and if it obtained a judgment against Willow Point before the Trustee it would impair the Trustee's ability to collect the amounts due the estate; and (5) a default judgment should be entered against Willow Point because, notwithstanding any of its assertions, it failed to answer the Supplemental Summons by March 13, 1995.

## DISCUSSION

Whether to vacate a default for good cause pursuant to Rule 7055 of the

---

secured the entry of default. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993).

3. Rule 7004(b)(3) provides that:

(b) Service by First Class Mail. Except as provided in subdivision (h), in addition to the methods of service authorized by Rule 4(c)(2)(C)(i) and (d) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Rules of Bankruptcy Procedure and Rule 55(c) of the Federal Rules of Civil Procedure, after evaluating the three criteria set forth by the United States Court of Appeals for the Second Circuit in *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981), is a determination addressed to the sound discretion of the Court, *see Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993). It is also clear in the Second Circuit that there is a strong preference for resolving disputes on the merits and that in evaluating the criteria to determine whether to vacate a default for good cause, doubts are to be resolved in favor of a trial on the merits. *Meehan*, 652 F.2d at 277.

After a review of the pleadings and proceedings in this case, I find that: (1) service of the Complaint and the Summons and the Supplemental Summons were properly made on Willow Point, as required by the Rules of Bankruptcy Procedure; (2) Nixon made every diligent effort possible to ensure that service was properly made; and (3) Willow Point received proper notice of the commencement of the Willow Point Adversary Proceeding.

Furthermore, I also find that Willow Point has failed to meet its burden of proof to demonstrate the good cause required by Rule 7055 of the Rules of Bankruptcy Procedure and Rule 55(c) of the Federal Rules of Civil Procedure to warrant the Court exercising its discretion to set aside the default entered on March 28, 1995 and to extend the time for Willow Point to answer the Complaint to a time after March 13, 1995.

## A. *Willfulness*

The Trustee would have the Court infer from the facts and circumstances of this case that Davie and Willow Point were attempting to ignore service by mail on Davie in New York in the hope that there would be no attempt at service on Davie in Florida. If that happened Willow Point might ultimately be able to argue that: (1) service by mail at Mountain Ash was not proper since Davie resided in Florida; and (2) the time within which the Trustee was required to bring the Willow Point Adversary Proceeding pursuant to the provisions of Section 546 had expired without proper service. Even if this were a reasonable inference to be drawn from the facts presented, an equally reasonable inference would be that once service was made on Davie in Florida, Willow Point knew an answer was required, it attempted to answer and, therefore, its default was not willful.

Notwithstanding those reasonable inferences, this case is somewhat unusual in that it appears that there may have been confusion as to the proper time to answer when the Supplemental Summons was issued and served prior to the time within which an answer was due in accordance with the Summons. Davie admitted in his Affidavit that he received the Supplemental Summons but denied that he received the Summons. Even if both the Summons and Supplemental Summons were received by Davie, and thus Willow Point, the Supplemental Summons indicated that the time to answer the Complaint (the identical Complaint was attached to both the Summons and Supplemental Summons) was thirty days from February 9, 1995, or March 11, 1995.

It would be reasonable for Davie and Willow Point to have assumed that the time to answer provided for in the Supplemental Summons superseded the time provided for in the Summons, and thus the time to answer had been voluntarily extended. Further confusion may have occurred when the attorney for Willow Point was advised by telephone on March 1, 1995 and by letter dated March 10, 1995 (received March 18, 1995) that the time to answer the Complaint had already expired in late February and a default would be pursued, notwithstanding that the time to answer the Complaint in accordance with the Supplemental Summons had not yet passed.

Although the Court finds that neither the Trustee nor Nixon did anything wrong in having the Supplemental Summons issued (to the contrary, Nixon was attempting to be most thorough in its representation of the Trustee), it is possible that the attorney for Willow Point may have been wrongfully dissuaded from filing an answer or making a motion after March 1, 1995 and on or before March 13, 1995 for an extension of time to answer. This could not have been because he rightfully believed that he had been grant-

ed an extension by Nixon, since it is clear that by the end of the day on March 1, 1995 Nixon had not granted an extension, or, if any extension had been granted that morning, it had been withdrawn, but because Nixon informed him that the time to answer had already expired in late February and it would be pursuing a default. It may be that as a result of Nixon's position no answer was filed when it might otherwise have been filed on or before March 13, 1995 because such an action might have been felt to be futile knowing that the Court would ultimately be required to decide the right of Willow Point to answer. However, this is speculation and not a reasonable inference since: (1) the attorney for Willow Point is a highly experienced and respected practitioner in Federal Court; (2) it is not reasonable to assume that such a practitioner would have met with Davie on February 24, 1995, received a copy of the Complaint and not have reviewed the Summons at that time or by March 13, 1995; (3) Davie claimed not to have received any of the papers except in Florida, so, if that was true he could only have received the Supplemental Summons; (4) even Davie read the Supplemental Summons and believed he had a time to answer past late February, 1995; and (5) based solely on a receipt of the papers in Florida by personal service after February 10, 1995, under neither the Rules of Bankruptcy Procedure nor the Federal Rules of Civil Procedure would the time to answer have properly expired in late February, 1995 as asserted by Nixon.

However, based upon: (1) the issuance of the Supplemental Summons which in this Court's view made the time to answer or move in connection with the Supplemental Summons March 13, 1995; (2) Davie's efforts to engage an attorney; (3) the request for an extension by the attorney for Willow Point on March 1, 1995 which was a time before the expiration of the time to answer in accordance with the Supplemental Summons; (4) the position of Nixon that the time to answer

expired in late February in accordance with the Summons and service in New York; and (5) the assertion by the attorney for Willow Point that he believed he had been or should have been granted an extension, the Court cannot find that the default by Willow Point was clearly willful.[4]

■ As to the issuance of a supplemental summons, where a second or supplemental summons has been requested by the plaintiff and has been issued by the Court against the same defendant in the same adversary proceeding, the defendant is entitled to assume that the supplemental summons supersedes the previously issued summons and that the time to answer the complaint is governed by the provisions of the supplemental summons.[5]

## B. *Meritorious Defense*

■ This Court believes that the most significant factor to be evaluated in determining whether to exercise its discretion in vacating a default is whether the defendant has presented a meritorious defense. The Court of Appeals for the Second Circuit has held that a defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense, and the test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense, *see Enron Oil Corp.*, 10 F.3d at 98.

■ A review of the Willow Point Answer and the allegations contained in the Davie Affidavit which specifically attempted to address the factor of meritorious defense, even when viewed most favorably, present at best conclusory denials. Notwithstanding that: (1) the Court gave Willow Point additional time to present its position as a Rule 55(c) motion, and therefore specifically present the

---

**4.** The Court does believe, however, notwithstanding any confusion, that an answer or motion to extend the time to answer could and should have been filed on or before March 13, 1995.

**5.** *Cf. In re Darling,* 172 B.R. 124 (Bankr.M.D.Fla. 1994) (analogous situation in which it was held

that a creditor had a right to assume a second notice prior to the expiration of the bar date to file nondischargeability complaints superseded the first notice and the second bar date superseded the original bar date).

kind of evidence of a meritorious defense that is required to establish good cause; and (2) for almost two years Willow Point knew this matter would be pursued by the Trustee, Willow Point has simply not presented sufficient evidence, as is required, from which the Court can determine that it has a meritorious defense.

█ The Second Circuit has held that, "[a]lthough in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts." *Sony Corp. v. Elm State Electronics, Inc.,* 800 F.2d 317, 320–21 (2d Cir.1986). The Willow Point Answer is in essence simply a series of general denials, and the allegations in the Davie Affidavit regarding meritorious defense do not even address directly any of the numerous causes of action set forth in the Complaint. The Affidavit clearly does not present evidence from which the Court can conclude that if that evidence were proved at trial, it would constitute a complete defense to any of the causes of action alleged by the Trustee.

The only affirmative defense upon which Willow Point could perhaps succeed on as a complete defense to some of the causes of action would be its affirmative defense of the expiration of any applicable statute of limitations. However, Willow Point has not set forth any evidence which would indicate that any applicable statute of limitations either under state law or Section 546 of the Bankruptcy Code had expired.

## C. *Prejudice*

█ The only prejudice that the Trustee has asserted he and the bankruptcy estate would suffer if the default is vacated is that if other pending litigation against Willow Point comes to a conclusion earlier than this Adversary Proceeding, it would affect the collectability of any judgment the Trustee might obtain. Given the Trustee's demand for an accounting and a need for a hearing on damages in this matter before any default judgment can be entered, this is not a sufficient showing of prejudice to weigh heavily in the evaluation of the required criteria.

In summary the Court finds on the facts and circumstances of this case that: (1) it is not clear that there was a willful default by Willow Point; (2) Willow Point has failed to demonstrate that it has a meritorious defense to the Complaint; and (3) the prejudice to the Trustee is not substantial and clearly not sufficient to be determinative.

In balancing these findings, even in light of the preference in the Second Circuit to resolve disputes by a trial on the merits, I find that Willow Point has failed to meet its burden to demonstrate that there is good cause to vacate its default.

The parties have indicated that although some of the causes of action which are the subject of the Willow Point Adversary Proceeding are non-core matters, they consent to this Court initially hearing these matters and making a recommendation to District Court with regard to the non-core matters.

## CONCLUSION

The Motions of Willow Point to set aside the default in this Adversary Proceeding, certified by the Clerk on March 28, 1995 and for an extension of time to answer the Complaint are in all respects denied. The Motion of the Trustee for the entry of a default judgment is granted. A pretrial conference in the Willow Point Adversary Proceeding will be conducted by the Court on September 19, 1995 at 3:00 p.m. to establish the method of proceeding with a hearing on damages required by Rule 7055 of the Federal Rules of Bankruptcy Procedure and Rule 55(b)(2) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**